UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DAVID GUZMAN,

      Petitioner,

v.                                    Case No. 8:19-cv-1337-VMC-TGW

SECRETARY, DEPARTMENT
OF CORRECTIONS,

      Respondent.

_____/

## ORDER

Petitioner David Guzman, a Florida prisoner, timely filed a *pro se* amended petition for writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 5.) Having considered the petition, the response in opposition (Doc. 10), and Guzman's amended reply (Doc. 18), the Court orders that Guzman's petition is **DENIED**.

## Procedural History

A state court jury found Guzman guilty of three counts of DUI with serious bodily injury and one count of DUI with property damage. (Doc. 11-3, Ex. 1, pp. 413-14.) The jury found that Guzman had a blood alcohol level above 0.15. (*Id.*) The state trial court imposed an overall term of 12 years and seven months in prison. (*Id.*, pp. 456-65.) The state appellate court *per curiam* affirmed Guzman's convictions and sentences. (Doc. 11-5, Ex. 4.) The state appellate court also denied Guzman's petition alleging ineffective assistance of appellate counsel, filed under Florida Rule of

Appellate Procedure 9.141, and amended petition. (Doc. 11-5, Ex. 9; Doc. 11-6, Ex. 9a; Doc. 11-7, Exs. 10, 12.)

## Facts[1]

Guzman was involved in a three-car crash in the early morning hours of August 19, 2012, in Winter Haven, Florida. While traveling southbound on Sixth Street Northwest, Guzman's vehicle, a Chevrolet Trailblazer, rear-ended a Chevrolet Tahoe driven by Andrew Estes. The Tahoe then traveled into the northbound lanes and collided head-on with a GMC Jimmy driven by Alexis Shumate.

Officer James Oftedal was the first officer to arrive. He found Guzman inside the Trailblazer lying across the driver and front passenger seats. Officer Oftedal observed a half-empty bottle of Captain Morgan rum in the back seat. Officer Eric Womack also arrived on the scene and observed Guzman inside his vehicle. EMS personnel removed Guzman from his vehicle and advised Officer Womack that they needed assistance. Officer Womack stood near Guzman, who had been placed on a stretcher. Officer Womack could smell alcohol on Guzman's breath and noticed that Guzman's eyes were bloodshot and glossy.

Guzman was taken to Lakeland Regional Medical Center. At the direction of his supervisor, Officer Womack went to the hospital to obtain a blood sample from Guzman. He did not obtain a warrant. Guzman did not respond when Officer Womack advised that he was present for a blood draw. The attending nurse complied

---

[1] This summary is based on the trial transcript and appellate briefs.

with Officer Womack's request that she conduct a blood draw. Guzman declined to sign a consent form. A blood sample analyzed by the Florida Department of Law Enforcement showed that Guzman's blood alcohol level was .285, more than three times the legal threshold of .08. A blood sample analyzed at the hospital showed a blood alcohol level of .29.

The occupants of the third vehicle, the GMC Jimmy that Estes's vehicle hit head-on, required medical treatment. The driver, Alexis Shumate, and one of the passengers, Rusty Waddle, had to be extracted from the vehicle. Shumate broke her pelvis and also broke both of her feet and legs. Rusty Waddle suffered a broken humerus, broken knees, and six broken ribs. He also had severe nerve damage in his wrist. Ashley Lawrence, the other passenger, suffered a brain injury. The right side of her body was weakened and she was unable to use her right hand. Lawrence had trouble with her memory and had to re-learn to walk, talk, eat, and write.

At trial, Guzman asserted that he was not responsible for the injuries to the occupants of the Jimmy. He alleged that the collision between the Tahoe and the Jimmy was caused by Estes's operation of the Tahoe.

## Standards of Review

### The AEDPA

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides

that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was

4

an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The state appellate court denied Guzman's petition alleging ineffective assistance of appellate counsel without discussion. This decision warrants deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). When a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S.Ct. 1188, 1192 (2018).

**Ineffective Assistance Of Counsel**

Guzman alleges ineffective assistance of appellate counsel. Ineffective assistance of counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id.* at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

Guzman must show that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting

aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To demonstrate prejudice, Guzman must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

The *Strickland* standard applies to claims of ineffective assistance of appellate counsel. *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991). To establish a claim of ineffective assistance of appellate counsel, Guzman must show that appellate counsel's performance was objectively unreasonable, and that there is a reasonable probability that, but for this performance, he would have prevailed on his appeal. *Robbins*, 528 U.S. at 285-86.

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (internal quotation marks and citations omitted); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013) (stating that this doubly deferential standard of review "gives both the state court and the defense attorney the benefit of the doubt."). "The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially

6

higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

## Discussion[2]

**Ground One**

Guzman claims that appellate counsel was ineffective for not adequately challenging the admission of the blood test results. Section 316.1933, Fla. Stat., allows for forcible blood draws. It provides that if a law enforcement officer has probable cause to believe that "a motor vehicle driven by . . . a person under the influence of alcoholic beverages . . . has caused the death or serious bodily injury of a human being, a law enforcement officer shall require [that] person" to submit to a blood test "for the purpose of determining the alcoholic content thereof[.]" § 316.1933(1)(a), Fla. Stat. "[S]ection 316.1933 is part of the trilogy of statutes comprising the implied consent statutory scheme. . . . [It] requires a police officer to obtain a driver's blood [under the circumstance set out in the statute] and to use reasonable force if necessary." *State v. Liles*, 191 So.3d 484, 487 n.2 (Fla. 5th DCA 2016).

The offenses occurred and the blood draw took place on August 19, 2012. Later, on April 17, 2013, the Supreme Court of the United States issued a decision in *Missouri v. McNeely*, 569 U.S. 141 (2013). *McNeely* addressed the "exigent circumstances" exception to the general rule that a search conducted without a warrant issued upon probable cause is unreasonable under the Fourth Amendment. The "exigent

---

[2] Respondent does not raise any procedural bars to Guzman's claims. *See* 28 U.S.C. § 2254(b)(1)(A).

circumstances" exception to the warrant requirement applies "when the exigencies of the situation make the needs of law enforcement so compelling that a warrantless search is objectively reasonable under the Fourth Amendment." *Id*. at 148-49 (citation omitted). A blood draw is a search subject to the Fourth Amendment's protections. *Id*. at 148. *McNeely* held that "in drunk-driving investigations, the natural dissipation of alcohol in the bloodstream does not constitute an exigency in every case sufficient to justify conducting a blood test without a warrant." *Id*. at 165.

Before trial, Guzman unsuccessfully moved to suppress evidence of the blood test results. Guzman argued that *McNeely* controlled, notwithstanding § 316.1933. Guzman argued that passage of time after the crash was not an exigent circumstance under *McNeely* and that since no exigent circumstances existed, the warrantless blood draw was illegal. (Doc. 11-2, Ex. 1, pp. 43-44.)

Guzman also asserted that even if the court determined that *McNeely* did not control, a warrant was still required because Officer Womack did not satisfy the statutory requirements before ordering the blood draw. He contended that Officer Womack acknowledged that he was unaware of the extent of the victims' injuries at the time of the blood draw, and thus lacked probable cause to believe that Guzman caused serious bodily injury. (*Id*., pp. 42-44.) Guzman also filed a motion to exclude the blood evidence on the basis that there was no substantial compliance with the Florida Administrative Code's procedures for handling blood samples. (*Id*., pp. 36-39.) He contended that there was insufficient evidence that the nurse who conducted the blood draw inverted the vials to mix the blood with the preservative and anticoagulant

as required. (*Id.*) The state trial court denied the motions after an evidentiary hearing. (*Id.*, pp. 222-26.)

Appellate counsel argued that the trial court erred in denying the motions. He argued that *McNeely* applied retroactively because Guzman's court proceedings were still pending when *McNeely* was decided. (Doc. 11-5, Ex. 2, pp. 30-33.) He contended that *McNeely* effectively invalidated §316.1933, Fla. Stat., and that since no exigent circumstances existed under *McNeely*, a warrant was required for the blood draw. (*Id.*) Appellate counsel additionally argued that the blood evidence should have been excluded because the State failed to adequately show substantial compliance with the Florida Administrative Code in the handling of the blood sample. (*Id.*, pp. 11-16.)

Guzman contends that appellate counsel (1) failed to adequately argue *McNeely*'s application to his non-final "pipeline" case; (2) failed to argue in the initial brief or in a reply brief that the officers lacked a good faith basis to rely upon § 316.1933, Fla. Stat.; and (3) failed to argue in the motion for rehearing that police could not have reasonably relied on § 316.1933 in light of *Carpenter v. State*, 228 So.3d 535 (Fla. 2017). Guzman has not established that the state appellate court unreasonably denied these claims of ineffective assistance of appellate counsel.

First, appellate counsel did argue that *McNeely* applied to Guzman's case, and Guzman has not established that counsel was ineffective in his presentation of this argument. Counsel argued that *McNeely* represented a dramatic shift in the law and was controlling authority in Guzman's case. (Doc. 11-5, Ex. 2, pp. 30-34.) Guzman

does not establish that counsel performed deficiently or that there is a reasonable probability he would have prevailed on his appeal had appellate counsel presented the *McNeely* argument in another fashion.

Second, Guzman fails to show that appellate counsel was ineffective for not arguing that police lacked a good faith basis to rely on § 316.1933. Evidence obtained in violation of the Fourth Amendment may be excluded; this exclusionary rule is a judicially-created remedy intended to protect Fourth Amendment rights by deterring illegal searches and seizures. *See Davis v. United States*, 564 U.S. 229 (2011). Because the exclusionary rule's purpose is to prevent future police misconduct, a good faith exception to the rule applies when an officer has acted in objectively reasonable reliance on a statute that is later invalidated. *See Illinois v. Krull*, 480 U.S. 340 (1987).

In challenging the denial of the motion to suppress, appellate counsel did note that the trial court agreed with the State's argument that the officers acted in good faith reliance on authority granted to them by § 316.1933, Fla. Stat. (Doc. 11-5, Ex. 2, p. 30.) Guzman does not show a reasonable probability that a more detailed argument based on the good-faith exception would have succeeded. "[B]efore *McNeely*, it was reasonable for the officers to have a good-faith belief in the constitutional validity of a warrantless blood draw authorized by section 316.1933(1)(a). . . . Accordingly, . . . based on the good-faith exception, the trial courts should not have suppressed the results of warrantless blood draws taken before the issuance of *McNeely*." *Liles*, 191 So.3d at 489-90. Again, § 316.1933, in effect at the time of Guzman's blood draw,

permitted forcible blood draws. *See Jackson v. State*, 456 So.2d 916 (Fla. 1st DCA 1984) (rejecting a challenge to the constitutionality of § 316.1933).

To the extent Guzman contends that Officer Womack improperly relied on § 316.1933 to require the blood draw because he lacked specific knowledge of the extent of the victim's injuries, Guzman fails to show that appellate counsel was ineffective for not raising this argument. Officer Womack responded to the scene and knew that the crash involved multiple vehicles. (Doc. 11-2, Ex. 1, p. 107.) He observed the vehicles and saw one on its side and another that had jumped a curb. (*Id*.) Officer Womack saw other officers and EMS personnel at the scene. (*Id.*, pp. 107-09.) Officer Womack also knew that the crash was serious enough for Guzman to have been taken to the hospital. (*Id.*, p. 112.)

Thus, it was not unreasonable for appellate counsel to conclude that Officer Womack's knowledge was sufficient to allow him to rely on the statute. *See*, *e.g.*, *State v. Durden*, 655 So.2d 215, 216 (Fla. 1st DCA 1995) ("Probable cause to order a blood test exists under section 316.1933(1) if an officer, based upon reasonably trustworthy information, has knowledge of facts and circumstances sufficient to cause a person of reasonable caution to believe that the suspect driver was under the influence of alcoholic beverages at the time of the accident and caused the death or serious bodily injury of a human being. Probable cause must be based on objective facts and circumstances, not on the officer's personal opinions or suspicions.").

As addressed, appellate counsel argued the blood evidence should have been excluded under *McNeely* and on the basis that there was no substantial compliance

with applicable regulations for handling blood samples. (*Id.*, pp. 11-16.) Guzman does not show that appellate counsel was ineffective for choosing to proceed with these arguments, rather than the argument Guzman proposes. Appellate counsel is not required to raise all non-frivolous issues on appeal. *See Jones v. Barnes*, 463 U.S. 745, 751-54 (1983). Indeed, appellate counsel must "examine the record with a view to selecting the most promising issues for review." *Id.* at 752. " '[W]innowing out weaker arguments on appeal and focusing on' those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (quoting *Jones*, 463 U.S. at 751-52).

Finally, Guzman fails to show that his appellate counsel was ineffective with respect to the motion for rehearing. Guzman argues that counsel should have argued on rehearing that the officers could not rely on the state statute to authorize a warrantless blood draw under *Carpenter v. State*, 228 So.3d 535 (Fla. 2017). In *Carpenter*, the Florida Supreme Court rejected an application of the good-faith exception to the exclusionary rule because the officers were not relying on longstanding precent "but rather on a nonfinal, pipeline case still under active review in [the Florida Supreme] Court at the time of the search." *Id.* at 542.

The *Carpenter* decision was not issued until after Guzman's appeal became final. However, Guzman does not show that appellate counsel was ineffective for not alerting the state district court of appeal that the Florida Supreme Court's decision in *Carpenter* was pending. Guzman does not establish how *Carpenter* would have supported an argument that law enforcement did not rely on the statute in good faith

in his case. Unlike the law in question in *Carpenter*, the statute upon which police relied in Guzman's case was well-established authority in Florida. *See Liles*, 191 So.3d at 489; *Jackson*, 456 So.2d 916. Guzman does not show that appellate counsel was ineffective in not making such an argument or that there is a reasonable probability he would have succeeded on appeal had counsel done so.

Guzman does not show that the state appellate court's ruling was contrary to or involved an unreasonable application of clearly established federal law, or was based on an unreasonable factual determination. Ground One warrants no relief.

**Ground Three**

In an argument similar to that raised in Ground One, Guzman contends in Ground Three that appellate counsel was ineffective in not arguing that the officers lacked probable cause to order a blood draw, in violation of his federal constitutional rights. Guzman again appears to rely on Officer Womack's acknowledgement that he was unaware of the extent of the victims' injuries when he ordered the blood draw. He also appears to argue that information known to other officers could not be imputed to Officer Womack. Guzman contends that appellate counsel should have filed a reply addressing the Florida Supreme Court's decision in *Montes-Valeton v. State*, 216 So.3d 475 (Fla. 2017).[3]

*Montes-Valeton* reaffirmed the holding of *Voorhees v. State*, 699 So.2d 602 (Fla. 1997), that "[t]he fellow officer rule allows an arresting officer to assume probable

---

[3] *Montes-Valeton* was decided on February 23, 2017, after Guzman's initial brief was filed.

cause to arrest a suspect *from information supplied by other officers*" and recognized that the fellow officer rule "does not allow an officer to assume probable cause for an arrest or a search and seizure from uncommunicated information known solely by other officers." *Montes-Valeton*, 216 So.3d at 479 (quoting *Voorhees*, 699 So.2d at 609) (emphasis in original).

As addressed, § 316.1933, Fla. Stat., provides that if a law enforcement officer can require a blood test if he or she has probable cause to believe that "a motor vehicle driven by . . . a person under the influence of alcoholic beverages . . . has caused the death or serious bodily injury of a human being[.]" In denying Guzman's motion to suppress, the state trial court found that such probable cause existed:

> As stated in <u>Williams v. State</u>, 731 So.2d 48, 50 (Fla. 2d DCA 1999): "Probable cause is a fluid concept that deals in probabilities, which include common sense conclusions by law enforcement officers." . . . "[T]he facts constituting probable cause need not meet the standard of conclusiveness and probability required of the circumstantial facts upon which conviction must be based."
>
> It is clear in this case that the crash in which the Defendant was involved resulted in serious bodily injury. Based on the testimony at the evidentiary hearings, there was probable cause to believe that the Defendant's vehicle struck vehicle 2 in the rear and thus initiated the crash.
>
> There was also probable cause to believe the Defendant was the driver of the vehicle that initiated the accident. Immediately after the accident, the Defendant was found in the driver's seat of a vehicle registered to him. He was the only occupant of the vehicle.
>
> There was also probable cause to believe the Defendant was under the influence [of] drugs or alcohol. A half full bottle of Captain Morgan's was observed in the vehicle, as well as an empty glass on the floor of the vehicle in the area of the driver's seat. The Defendant was also observed

to have blood shot eyes, slurred speech, and the odor of alcohol on his breath.

(Doc. 11-2, Ex. 1, pp. 224-25.)

Guzman does not show that the state appellate court unreasonably denied his claim of ineffective assistance of appellate counsel. Appellate counsel explained in a letter to Guzman that he did not believe it was wise to dilute the arguments brought in the initial brief by filing a reply brief. (Doc. 11-6, Ex. 9a, Attachment XXII.) Appellate counsel's letter explained that he believed *Montes-Valeton* was easily distinguishable from Guzman's case and addressing it in a reply brief would have impermissibly raised new issues not addressed in the initial brief. (*Id.*)

In addition, appellate counsel reasonably could have concluded that a probable cause challenge was not likely to succeed. Although Officer Womack had no specific knowledge of the extent of the victims' injuries, appellate counsel could have concluded that information available to Officer Womack, including his own observations at the scene, supported probable cause to believe Guzman had caused serious bodily injury. Furthermore, as addressed in Ground One, it is apparent that counsel chose to challenge the admission of the blood results by arguing that the state court erred by failing to apply *McNeely* to Guzman's case and by finding that the blood draw substantially complied with the Florida Administrative Code.

For the reasons discussed in Ground One, Guzman does not establish that counsel was ineffective for choosing this approach. Under these circumstances, the state appellate court did not unreasonably determine that appellate counsel was

15

ineffective for failing to challenge the trial court's finding of probable cause. Guzman does not show that the state appellate court's decision was contrary to or involved an unreasonable application of clearly established federal law or was based on an unreasonable factual determination. Therefore, he is not entitled to relief on Ground Three.

**Ground Two**

Guzman argues that appellate counsel was ineffective for inadequately arguing that the trial court erred in granting the State's motion regarding Guzman's medical records. When the State requested a subpoena duces tecum for Guzman's medical records, the trial court denied the request because obtaining the records would have delayed the trial. (Doc. 11-2, Ex. 1, p. 238.) Later, the State filed a motion for reconsideration. (*Id.*, pp. 238-57.) The State argued that because a continuance was subsequently granted on another basis, the trial court's reason for denying the request to obtain medical records had become moot. (*Id.*, p. 238.) When Guzman opposed the motion for reconsideration as untimely under Florida Rule of Criminal Procedure 3.192, the State filed an amended motion for reconsideration. (*Id.*, pp. 258-94.) The State maintained that the time limitation set out in Rule 3.192, which governs motions for rehearing of pretrial motions, did not apply because a court can reconsider a ruling at any time it retains jurisdiction over the case. (*Id.*, pp. 261-62 .)

After conducting a hearing, the state trial court granted the State's amended motion for reconsideration. (Doc. 11-3, Ex. 1, pp. 298-326.) The trial court found that the motion for reconsideration was timely, even assuming Rule 3.192 applied. (*Id.*, pp.

324-26.) Specifically, the trial court relied on language in Rule 3.192 that states, "[n]othing in this rule precludes the trial court from exercising its inherent authority to reconsider a ruling while the court has jurisdiction of the case." (*Id.*, p. 325.) As a result, the State introduced at trial evidence concerning Guzman's medical records, including the blood sample analyzed at the hospital.

On appeal, counsel challenged the admission of the medical records evidence by arguing that the records were impermissible hearsay evidence and their admission violated his rights under the Confrontation Clause as set out in *Crawford v. Washington*, 541 U.S. 36 (2004). (Doc. 11-5, Ex. 2, pp. 17-25.) Guzman appears to contend that appellate counsel also should have argued that the State's motion for reconsideration should have been dismissed as untimely.

Guzman's ineffective assistance claim turns on a question of state procedural law: whether the motion for reconsideration was untimely under Florida law. The state appellate court has already determined that appellate counsel was not ineffective for failing to raise this issue of state law. This Court must defer to the state appellate court's resolution of this state law question. *See Pinkney v. Secretary, DOC*, 876 F.3d 1290, 1295 (11th Cir. 2017) ("[A]lthough 'the issue of ineffective assistance—even when based on the failure of counsel to raise a state law claim—is one of constitutional dimension,' [a federal court] 'must defer to the state's construction of its own law' when the validity of the claim that appellate counsel failed to raise turns on state law." (quoting *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984))).

Although Guzman asserts that the underlying evidentiary issue involves his Fourteenth Amendment due process rights, the question of timeliness under Florida Rule of Criminal Procedure 3.192 is a state law issue. To the extent Guzman attempts to frame a state law issue in federal constitutional terms, he cannot avoid the deference owed to the state court's ruling on a state law matter. *See, e.g.*, *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) ("[A] habeas petition grounded on issues of state law provides no basis for habeas relief. . . . This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is couched in terms of equal protection and due process." (internal quotation marks and citation omitted)).

In addition, as addressed, appellate counsel chose to challenge the introduction of Guzman's medical records on other grounds. Appellate counsel argued that the trial court erred in allowing these records into evidence based on the business records exception to the rule against hearsay. (Doc. 11-5, Ex. 2, pp. 17-25.) Counsel vigorously argued that applying the business records exception in this case violated Guzman's right to confrontation. (*Id.*)

Guzman does not show that appellate counsel was ineffective for choosing to focus on the argument that he presented on appeal and to omit the identified procedural argument. *See Smith*, 477 U.S. at 536; *Jones*, 463 U.S. at 751-54. As Guzman fails to establish that the state court's decision was contrary to or involved an unreasonable application of clearly established federal law or was based on an unreasonable factual determination, he is not entitled to relief on Ground Two.

**Ground Four**

Guzman argues that appellate counsel was ineffective for not challenging the denial of his motion for judgment of acquittal. Guzman contends that appellate counsel should have argued that "the State did not establish the statutory element of causation of the serious bodily injury" to the three occupants of the GMC Jimmy. (Doc. 5, p. 24.) Guzman relies on the theory, which he believes to be supported by testimony of accident reconstructionist David Brill, that Estes was responsible for the crash between Estes's Tahoe and the Jimmy. (*Id.*, pp. 26-28.)

The state appellate court denied this claim without discussion. Guzman has not met his burden of establishing that the state appellate court's denial was unreasonable. In ruling on a motion for judgment of acquittal, a state trial court must consider the evidence in the light most favorable to the State. *See Boyd v. State*, 910 So.2d 167, 180 (Fla. 2005) ("A trial court should not grant a motion for judgment of acquittal 'unless the evidence is such that no view which the jury may lawfully take of it favorable to the opposite party can be sustained under the law.'" (quoting *Lynch v. State*, 293 So.2d 44, 45 (Fla. 1974))); *Odom v. State*, 862 So.2d 56, 59 (Fla. 2d DCA 2003) ("A trial court should not grant a motion for judgment of acquittal unless the evidence, when viewed in a light most favorable to the State, fails to establish a prima facie case of guilt.").

To establish the offense of DUI causing serious bodily injury, the State had to prove beyond a reasonable doubt that (1) Guzman drove or was in actual physical control of a vehicle; (2) while driving or in actual physical control of the vehicle, Guzman was under the influence of alcoholic beverages to the extent that his normal

faculties were impaired and/or had a blood alcohol level of .08 or more grams of alcohol per 100 milliliters of blood; and (3) as a result of operating the vehicle, Guzman caused or contributed to causing serious bodily injury to the victim. § 316.193(3)(a)-(c)2., Fla. Stat. (*See* Doc. 11-3, Ex. 1, p. 400.)

Appellate counsel could have reasonably concluded that the State's evidence was sufficient to show that Guzman at least "contributed to causing" the injuries to the occupants of the Jimmy. It was undisputed that Guzman's Trailblazer rear-ended the Tahoe, which then collided with the Jimmy. Two witnesses for the State, Brill and Officer Justin Minser, testified concerning causation. Officer Minser testified that as a result of his investigation, he concluded that Guzman was at fault. (Doc. 11-4, Ex. 1b, p. 294.) Brill was initially hired by the Jimmy's driver, Alexis Shumate, in a civil lawsuit. Brill testified at trial that Guzman contributed to the crash between the Tahoe and the Jimmy because Guzman "set[ ] the events in motion that cause[d] the second collision [between the Tahoe and the Jimmy]." (Doc. 11-4, Ex. 1c, p. 702.)

On cross-examination, Brill conceded that in an evaluation he prepared for the civil lawsuit, he concluded that Estes was responsible for the second collision. But Brill explained that he treated the two crashes as separate incidents for purposes of the evaluation, and thus the evaluation concerned the Tahoe and the Jimmy in isolation. (*Id.*, pp. 725, 731.) Brill reiterated, however, that the second crash was "initiated . . . by the original collision." (*Id.*, pp. 731-32, 736.)

Therefore, appellate counsel could have reasonably determined that there was little chance of succeeding on a challenge to the denial of a motion for judgment of

acquittal due to failure to establish causation. Any inconsistencies in the testimony about causation involved questions to be determined by the jury rather than by the trial court in ruling on a motion for judgment of acquittal. *See State v. Shearod*, 992 So.2d 900, 903 (Fla. 2d DCA 2008) ("The existence of contradictory, conflicting testimony or evidence 'does not warrant a judgment of acquittal because the weight of the evidence and the witnesses' credibility are questions solely for the jury.'" (quoting *Fitzpatrick v. State*, 900 So.2d 495, 508 (Fla. 2005))).

Additionally, appellate counsel could have reasonably concluded that a more promising argument regarding causation involved a challenge to the trial court's ruling excluding evidence that Guzman believed would have attributed causation to Estes. The state trial court granted the State's motion to exclude evidence about Estes's blood alcohol level. (Doc. 11-3, Ex. 1a, pp. 123-28.) Appellate counsel argued that the trial court erred by excluding this evidence in ground three on appeal, asserting a denial of his right to present a defense. (Doc. 11-5, Ex. 2, pp. 26-29.)

As appellate counsel could not expect to prevail on an argument that the trial court erred in denying the motion for judgment of acquittal, he reasonably chose instead to challenge the exclusion of other evidence concerning causation. Guzman fails to show that appellate counsel unreasonably pursued this claim of trial court error. *See Smith*, 477 U.S. at 536; *Jones*, 463 U.S. at 751-54. Guzman has not demonstrated that the state appellate court's denial of his ineffective assistance of appellate counsel claim was contrary to or involved an unreasonable application of clearly established

federal law or was based on an unreasonable factual determination. Accordingly, Guzman is not entitled to relief on Ground Four.

It is therefore **ORDERED** that Guzman's amended petition (Doc. 5) is **DENIED**. The **CLERK** is directed to enter judgment against Guzman and to **CLOSE** this case.

**Certificate Of Appealability**
**And Leave To Appeal *In Forma Pauperis* Denied**

It is further **ORDERED** that Guzman is not entitled to a certificate of appealability ("COA"). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a COA must first issue. *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To obtain a COA, Guzman must show that reasonable jurists would find debatable both (1) the merits of the underlying claims and (2) the procedural issues he seeks to raise. *See* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Guzman has not made the requisite showing. Finally, because Guzman is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**ORDERED** in Tampa, Florida, on August 2, 2022.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

22
